UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                              Case No. 09-75163-ast

Richard Rubio and Eileen Rubio,                      Chapter 11

                                Debtors.
------------------------------------------------------------X

## DECISION AND ORDER ON MOTION TO DISMISS OR CONVERT

       Pending before the Court in the above referenced chapter 11 case of Debtors Richard and

Eileen Rubio (the "Rubios") is the motion filed by the United States Trustee ( the "UST") seeking

dismissal or, in the alternative, conversion to chapter 7, of this chapter 11 case (the "Motion").

[dkt item  66][1]  The Rubios filed an objection to the Motion. [dkt item 72]  This Court conducted

a hearing on the Motion on November 3, 2010 (the "Hearing").

       By its Motion, the UST seeks dismissal or conversion of this case due to the Rubios's

post-petition losses and inability to reorganize, and based on the Rubios's failure to timely file

monthly operating reports ("MORs").  For the reasons herein, this Court grants the Motion and

will dismiss this case.

## Procedural History

       On April 29, 2009,  Westhampton Classic Cars d/b/a Manhattan Motorcars of the

Hamptons ("Classic Cars") and Debtor Westhampton Coachworks, Ltd. ("Coachworks") each

filed voluntary petitions under chapter 11 of the Bankruptcy Code. [09-73008 dkt item 1; 09-

73009 dkt item 1 ]  Thereafter, on July 13, 2009 (the "Petition Date"), Richard Rubio, the 100%

shareholder of Coachworks and 98% shareholder of Classic Cars and his wife, Eileen Rubio, filed

---

[1] References to the docket [dkt item –] are to the associated ECF entries for the main case.

Decision and Order - p. 1

this joint voluntary chapter 11 petition, case number 09-75163-ast.  On May 6, 2010, Tuscan Sun

Ristorante, Inc. d/b/a Annona ("Tuscan"), a former tenant of Rubio and whose President is Rubio,

filed a voluntary chapter 11 petition, case number 10-73391-ast.

The UST has not appointed a Committee of Unsecured Creditors pursuant to 11 U.S.C.

§1102(a) for the Rubios.  Throughout the second half of 2009 and throughout 2010, this Court

conducted general case status conferences in this case along with the Coachworks and Classic

Cars cases, in accordance with Section 105 (d) of the Bankruptcy Code. *See* 11 U.S.C. § 105(d).

These status conferences were held on a consolidated basis with the Tuscan case in the second

half of 2010 following Tuscan's filing.

On October 7, 2009, this Court entered a bar date [dkt item 25], establishing December

11, 2009, as the deadline for creditors to file proofs of claim.

The UST also filed motions to convert or dismiss the Tuscan, Coachworks, and Classic

Cars cases.  On November 29, 2010, this Court issued its Decision and Order converting the

Tuscan case to chapter 7. [10-73391-ast, dkt items 31, 32]  On December 21, 2010, this Court

issued its Decision and Order converting the Coachworks and  Classic Cars cases to chapter 7.

[09-73008-ast, dkt items 116-17; 09-73009-ast, dkt items 91-92]  No appeal has been taken from

either of these conversion orders.

## **Factual Background**

Prior to the Petition Date, the Rubios derived their predominant income from Coachworks,

Classic Cars, and Tuscan.  Coachworks operated as a body shop and restoration facility, and was

one of only four body shops in the United States approved to undertake structural damage repairs

on Rolls Royce automobiles.   Classic Cars was in the business of selling new and pre-owned

luxury automobiles.  Classic Cars also operated under the d/b/a of Manhattan Motorcars of the Hamptons.  Tuscan operated a restaurant under the name "Annona" at the same location as Classic Cars.  Tuscan closed its doors on October 31, 2010, prior to its conversion to chapter 7.

The Rubios's Schedules reflect ownership of a residence with a stated value of $700,000.00 encumbered by two mortgage liens held by Chase Mortgage and Indymac Bank aggregating $347,596.00. [dkt item 1]  However, six secured claims relating to the residence aggregating $1,153,591.54 have been filed.[2]  The Rubios listed personal property valued at $124,813.50, including $105,413.13 in bank account balances, which included $10,000.00 in savings bonds.  The Rubios scheduled no priority creditors and listed seventeen unsecured creditors with claims in the aggregate amount of $6,302,564.84. [dkt items 1, 57]  The Rubios's Schedule I reflects combined monthly income aggregating $5,700.00 and Schedule J reflects $5,503.00 in monthly expenses.

Twenty-six claims have been filed against the Rubios, consisting of unsecured claims of $3,515,441.94, secured claims of $1,154,030.30, and priority claims of $1,377,069.48.

Since the Petition Date, based on their MORs through November 2010 [dkt item 74], the Rubios are incurring more monthly debts than their income will cover,[3] and they currently have less than $2,500.00 in their DIP accounts.  Thus, the Rubios's cash position has decreased by

---

[2] The six secured claims filed against the Rubios's residence are: (1) a mortgage lien by OneWest Bank in the amount of $247,507.70; (2) a home equity loan held by JP Morgan Chase in the amount of $98,796.70; (3) three judgment liens held by Bank of Smithtown aggregating $759,427.88; and (4) a JP Morgan Chase lien in the amount of $47,859.26.  Bank of Smithtown filed an adversary proceeding against the Rubios seeking a determination of non-dischargeability of certain debts owed by the Rubios. [Adv. pro. 09-8462] The Rubios settled the adversary proceeding pursuant to a stipulation, which this Court approved by Order entered on November 23, 2010, after notice thereof was provided to creditors. That Stipulation provides, *inter alia*, that the Bank of Smithtown claim in the sum of $526,301.60, with interest thereon at the rate of 9% per annum from July 1, 2009, is declared to be non-dischargeable. [adv. pro. 09-8462, dkt item 18]

[3] For example, for November 2010, the Rubios incurred $4,879.72 of expenses before attorneys fees against $3497.76 of income.  The bulk of their income is social security and pension income.

more than $100,000.00 since filing for bankruptcy protection.

The Rubios opposed the UST Motion. In their opposition filed on October 29, 2010 (the "Opposition"), the Rubios acknowledged that the success of their case is tied closely to the success of Coachworks, Classic Cars, and Tuscan cases. Mr. Rubio testified that these businesses "have been my sole source of income, other than retirement income, since their establishment." He also stated that, while the businesses "have failed to show a meaningful profit," he was in the "process of securing financing which would enable the businesses to begin to operate at a level by which the parties will be able to pay the Fiduciary taxes[4] which are owed and generate enough operating revenue to make a distribution to creditors in this proceeding as well as" the cases of Coachworks, Classic Cars, and Tuscan. [dkt item 72]

At the Hearing of November 3, 2010, the Rubios repeated their optimism that the "white knights" hoped for by Coachworks and Classic Cars were in the offing, and acknowledged the dependence of the Rubios case on the success of Coachworks, Classic Cars, and Tuscan. None of the financing the Rubios hoped for has materialized, and as a result, the Coachworks, Classic Cars, and Tuscan cases have all been converted to chapter 7.

Thus, the Rubios have demonstrated both an inability to operate profitably post-petition, and an inability to confirm a plan of reorganization.

## Legal Analysis

*Dismissal or Conversion Under Section 1112*

The parties dispute whether cause exists to either dismiss or convert this case. Therefore, as was done in the related cases, the Court must first determine whether cause exists to dismiss or

---

[4] Presumably, this refers to the accumulated unpaid post-petition payroll taxes of $211,549.03 and unpaid post-petition sales taxes of $126,212.90 Coachworks acknowledged as owing.

convert this case, and then, if so, determine whether dismissal or conversion to chapter 7 is in the best interests of the creditors and the estates.[5]

This Court has recently noted that Section 1112(b)(1) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112 (b)(1); *see also In re Westhampton Classic Cars*, No. 09-73009 (Bankr. E.D.N.Y. Dec. 21, 2010); *In re Tuscan Sun Ristorante, Inc.*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010); *In re Jude Thaddeus Partners 1, Inc.*, No. 10-73014, 2010 WL 4496836 (Bankr. E.D.N.Y. 2010).  As also noted therein, Section 1112(b)  provides a nonexhaustive list of circumstances constituting cause. *See* 11 U.S.C. § 1112(b)(4).

Here, the UST asserts cause is established under 11 U.S.C. § 1112(b)(4)(A), based upon "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[,]" and under Section 1112(b)(4)(F), based upon "unexcused failure to satisfy timely any filing or reporting requirement . . .." 11 U.S.C. § 1112(b)(4)(A), (F).

Section 1112 (b)(1) provides that once cause is established, the case shall be dismissed or converted unless the Court specifically finds unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of

---

[5] Neither the Rubios nor the UST asserts that unusual circumstances exist which may be specifically identified by the Court showing that dismissal or conversion is not in the best interests of creditors and the estate under 11 U.S.C. § 1112(b)(2).

creditors and the estate.  Section 1112(b)(2) places the burden of proof of demonstrating such special circumstances on the debtor.  However, the unusual circumstances exception to dismissal or conversion under Section 1112(b)(2) is inapplicable where the movant seeks dismissal or conversion based on the loss and diminution of estate assets and absence of a reasonable likelihood of rehabilitation under Section 1112(b)(4)(A). *See In re Westhampton Coachworks*, No. 09-73008 (Bankr. E.D.N.Y. Dec. 21, 2010); *Tuscan Sun*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010); *see also In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).  As recently noted in *In re BH S&B Holdings, LLC*, a bankruptcy court has "wide discretion" to determine whether cause exists to dismiss or convert a chapter 11 case under Section 1112(b). *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

This Court finds that cause to dismiss or convert exists under Section 1112(b)(4)(A).  The Rubios have had more than adequate time of nearly eighteen months to propose a meaningful plan for rehabilitation.  Although the Rubios hoped for one or more 'white knights' to rescue their related businesses, none has materialized within the time frames the Rubios had expressed.

As for Section 1112(b)(4)(F), this Court notes that the Rubios had been significantly delinquent in filing a number of MORs.  However, these delinquencies were predominantly cured prior to the issuance of this decision.  Therefore, this Court does not reach the issue of whether cause has been established under Section 1112(b)(4)(F).

*Conversion to Chapter 7 or Dismissal*

The UST asserts that this case should be dismissed rather than converted to chapter 7.  To obtain dismissal, the UST must establish that dismissal is in the best interests of creditors and the estate. *See Coachworks*, No. 09-73008 (Bankr. E.D.N.Y. Dec. 21, 2010); *Tuscan Sun*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010); *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr.

S.D.N.Y. 2003).  In seeking dismissal, the UST asserts that the Rubios "have failed to meet the basic obligations of a debtor in possession" and that "creditors should be afforded the opportunity to enforce their respective rights outside this Court." [dkt item 66 ¶34]  The Rubios only opposed the Motion, and did not alternatively request conversion over dismissal. [dkt item 72]

*The Test to Dismiss or Convert*

As this Court noted in *Coachworks* and *Tuscan Sun*, courts that have addressed Section 1112(b) have not developed a bright-line test to determine when conversion or dismissal is in the best interests of creditors and the estate. *Coachworks*, No. 09-73008, 2010 WL 5348422 (Bankr. E.D.N.Y. Dec. 21, 2010); *Tuscan Sun*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010).  As Judge Glenn recently noted in *BH S&B Holdings, LLC*, in deciding whether to dismiss or convert, the court "should carefully examine all facts. . .." *BH S&B Holdings, LLC*, 439 B.R. at 348.  In *BH S&B*, after applying the same test from Collier's discussed *infra*, the court converted the case because conversion would allow a chapter 7 trustee to commence potential avoidance actions and maximize the estate's value as an economic enterprise. *Id.* at 350.  In converting rather than dismissing *Tuscan*, *Coachworks*, and *Classic Cars*, this Court noted the existence of assets to be administered, the existence of transfers and transactions for a trustee to investigate, and the benefits to creditors from utilization of the "centralized collection and disbursement provided by the bankruptcy process."  *See Coachworks*, No. 09-73008, 2010 WL 5348422 at *7.

*Whether the Test to Dismiss or Convert Is Different for an Individual Chapter 11 Debtor*

One additional inquiry is whether the fact that this is an individual chapter 11 case requires or directs this Court to consider different criteria than would be considered in an entity case, such as in *Tuscan*, *Coachworks*, and *Classic Cars.*  In other words, did Congress direct this Court to also consider or only consider the best interests of the debtors if the chapter 11 case is

filed by an individual or, as here, as a joint individual petition?  From this Court's perspective, the

answer is 'no' because Section 1112(b) does not so provide, and the context in which Section

1112(b) appears does not indicate Congress so intended.

Section 1112(a) provides circumstances under which the debtor may convert a chapter 11

case. *See* 11 U.S.C. § 1112(a).[6]  Section 1112(d) provides that a court may not convert a chapter

11 case to a case under chapter 12 or chapter 13 of the Bankruptcy Code unless, *inter alia*, "the

debtor requests such a conversion." 11 U.S.C. § 1112(d).  Section 1112(c) prohibits conversion to

chapter 7 of a debtor who is a farmer[7] unless the debtor requests such a conversion. 11 U.S.C. §

1112(c).

Section 1112(e) specifically addresses conversion of an individual chapter 11 case to

chapter 7 for a debtor's failure to provide the information required by or otherwise to comply with

"paragraph (1) of Section 521."[8] 11 U.S.C. § 1112(e).  Interestingly, Section 1112(e) also

provides that the Court shall dismiss or convert a case based upon the best interests of the estate

and the creditors.  Much of the information required under Section 521(a)(1) is inapplicable in

entity cases but is applicable in individual cases.  The corollary dismissal provision for a chapter

---

[6] Section 1112(a) provides:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless--

(1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter; or

(3) the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a).

[7] The Court notes that although the Bankruptcy Code does not define the term "farmer," it does define "family farmer" under Section 101(18).

[8] The Court notes that Section 521 has various subsections which contain a paragraph (1); however, logic dictates that Congress intended this reference to be paragraph (1) of subsection (a), which includes a list of required documents and information.

7 case for failure to comply with Section 521(a)(1) is Section 707(a)(3).[9] 11 U.S.C. § 707(a)(3).

Certainly, had Congress intended different factors to apply in dismissal or conversion of individual chapter 11 cases, it could and would have done so. For example, Section 1129(a)(15)[10] contains a chapter 11 confirmation provision applicable only in "a case in which the debtor is an individual." 11 U.S.C. § 1129(a)(15). Thus, the Rubios's best interests are not a factor for this Court to consider in determining the UST's Motion.

In *In re Washington*, No. 09-8248, 2010 WL 5128955 (Bankr. D.S.C. Sept. 27, 2010), the court considered whether to dismiss or convert a joint individual chapter 11 case. After finding

---

[9] Section 1112(e) provides:

> (e) Except as provided in subsections (c) and (f), the court, on request of the United States trustee, may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate if the debtor in a voluntary case fails to file, within fifteen days after the filing of the petition commencing such case or such additional time as the court may allow, the information required by paragraph (1) of section 521, including a list containing the names and addresses of the holders of the twenty largest unsecured claims (or of all unsecured claims if there are fewer than twenty unsecured claims), and the approximate dollar amounts of each of such claims.

11 U.S.C. § 1112(e). Compare this with the language of Section 707(a)(3):

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including . . .(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a)(3)

[10] Specifically, the provision provides as follows:
> (15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--
>
>> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>>
>> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15).

cause existed to dismiss or convert under Section 1112(b), the court determined that dismissal was in the best interests of the creditors and the estate because, even though the debtors owned several rental properties, those properties were heavily encumbered and had no equity for the benefit of the estate.  The court found that "[a]s a result, Chapter 7 liquidation would likely produce little to no benefit to creditors and the estate" and it was therefore "in the best interest of Debtors' creditors and estate to dismiss Debtors' chapter 11 case." *Washington*, No. 09-8248, 2010 WL 5128955 *4 (Bankr. D.S.C. Sept. 27, 2010); *see also In re Van Eck*, 425 B.R. 54,68 (Bankr. D. Conn. 2010)(dismissing individual chapter 11 case, rather than converting, where UST sought dismissal and no one, including debtor, "spoke for conversion.").  The Rubios did not ask for conversion in their Opposition.

*Dismissal or Conversion Factors*

As in previous decisions, this Court will employ an analysis of all relevant facts based upon a ten-factor test to determine whether dismissal or conversion is in the best interests of creditors and the estate without regard to what may be in the Rubios's best interests:

1.  Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
2.  Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
3.  Whether the debtor would simply file a further case upon dismissal;
4.  The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
5.  Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
6.  Whether any remaining issues would be better resolved outside the bankruptcy forum;
7.  Whether the estate consists of a "single asset";
8.  Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
9.  Whether a plan has been confirmed and whether any property remains in the estate to be administered; and

> 10.    Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

COLLIER ON BANKRUPTCY ¶ 1112.04[7] at 1112-39-1112-40; *see also BH S&B Holdings, LLC*, 439 B.R. at 347.

In the present case, a plan has not been confirmed and will not be confirmed, and no sale of assets has been approved. This Court will consider the following factors in determining whether to convert or dismiss: the known assets to administer; the impact of dismissal or conversion on creditors; any known available avoidance actions; the position of the United States Trustee; and the Court's interest in protecting the bankruptcy process.

A.    *Assets to Administer*

Creditors of these estates would not significantly benefit from the appointment of a chapter 7 trustee to oversee the liquidation and distribution of the available assets. The Rubios spent down virtually all of their existing cash during the case, to the point of less than $2,500.00 in their DIP account, as of November 30, 2010.[11] The Rubios's only other scheduled assets worth noting outside of their house are a twenty-five-year-old Mercedes with over 100,000 miles on it and a fifteen-year-old BMW motorcycle. The Rubios appear to have no equity in their residence available for creditors. After exemptions, even if the savings bonds are still available, any residue of the personal property would be consumed by chapter 11 and chapter 7 administrative expenses. There have been no avoidance actions identified. Thus, conversion to chapter 7 would not generate funds to distribute to creditors. Moreover, with the level of priority claims and unsecured claims filed against the Rubios, no meaningful dividend, if any, could reasonably be anticipated for secured or unsecured creditors.

---

[11] At this stage, this Court is unclear what has transpired with the $10,000.00 in savings bonds listed in the Schedules.

B.        *Impact of Dismissal or Conversion on Creditors*

Unlike *Tuscan*, *Coachworks*, and *Classic Cars*, the creditors in this case are not better served by the centralized collection and disbursement provided by the bankruptcy process. Dismissal allows creditors to again exercise their pre-bankruptcy rights.

C.        *Avoidance Actions*

As noted, a trustee is not necessary in this case to investigate the inter-company and related entities transactions of *Tuscan*, *Coachworks*, and *Classic Cars* because no avoidance actions involving the Rubios have been identified that should be pursued.

D.        *Position of the United States Trustee*

As noted previously by this Court, a certain degree of deference should be given to the position of the UST.  This Court certainly gives due weight to the UST's position seeking dismissal of this case.

E.        *The Court's Interest in Protecting the Bankruptcy Process*

The Court must balance the competing benefits the bankruptcy process offers to both debtors and creditors. The Rubios sought protection from their creditors and accepted the benefits of bankruptcy protection for nearly eighteen months.  Now, their creditors should be entitled to exercise their nonbankruptcy remedies.  Here, the centralized forum bankruptcy provides to collect and disburse available assets does not provide a benefit to these creditors.

*The Court Finds that Dismissal Is in the Best Interests of Creditors of the Estate*

This Court finds and concludes that this estate and the Rubios's creditors would not benefit from the conversion of this case to chapter 7 and the appointment of a chapter 7 trustee. Therefore, dismissal is in the best interests of creditors and the estate, and this case will be dismissed.

## Conclusion

Based on the foregoing, this Court concludes that the best interests of creditors and the estate favor dismissal.  A separate order hereon shall issue.

**Dated: January 13, 2011**
      **Central Islip, New York**

**Alan S. Trust**
**United States Bankruptcy Judge**

Decision and Order - p. 13